The HOME INSURANCE COMPANY, Plaintiff-Respondent,

v.

Edward PHILLIPS, Sandra Phillips, and Bradley W. Phillips, a minor, Defendants-Appellants,

Kevin C. RENCH and Maryland Casualty Company, Defendants.

Court of Appeals

*No. 92-0635. Oral argument January 20, 1993.—Decided March 3, 1993.*

(Also reported in 499 N.W.2d 193.)

On behalf of the defendants-appellants, there were briefs by *Philip L. Atinsky* and *William S. Mautner* of *Atinsky, Kahn, Sicula & Teper* of Milwaukee. There was oral argument by *William S. Mautner.*

On behalf of the plaintiff-respondent, there was a brief by *Ronald L. Piette* and *Mark R. Kramer* of *Piette & Jacobson, S.C.* of Milwaukee. There was oral argument by *Ronald L. Piette.*

Before Nettesheim, P.J., Brown and Snyder, JJ.

BROWN, J.   Edward and Sandra Phillips and their minor son Bradley appeal from a declaratory judgment in favor of The Home Insurance Company. The issue is: Under *Arps v. Seelow,* 163 Wis. 2d 645, 472 N.W.2d 542 (Ct. App. 1991), and sec. 632.32, Stats., can an adult member of a car owner's household give himself or herself permission to use the car when the head of the household's business is the named insured on the policy covering the car? We conclude that the owner of a car

should be treated as the named insured for the purpose of awarding third-party coverage. We therefore reverse the judgment. Our holding is confined to situations such as this case, when the named insured is a corporation and the insurer knows that the automobiles are owned by its employees and are used by the employees' families for personal purposes.

The factual background of this case is brief. Bradley Phillips was injured when a Mazda automobile in which he was riding collided with a tree. Kevin Rench was driving the car, which was owned by his father Quentin Rench. The car was insured under a Home Insurance commercial automobile policy listing Racine Industries/ Von Schrader Company (Racine Industries) as the "named insured." Quentin is the president and CEO of Racine Industries. Home was aware that Quentin owned the Mazda. It listed the car as a "covered auto" in the policy, and listed Kevin as a driver of the Mazda. Kevin lived at home with his parents, but was over eighteen years old at the time of the accident.

Home filed a declaratory judgment action seeking a determination as to coverage for Bradley's injuries. The Phillips filed a counterclaim alleging coverage. Both parties then filed motions for summary judgment. Home argued that Bradley's injuries were not covered under the policy because Kevin was not driving a "covered auto" that was owned, hired or borrowed by Racine Industries. Home also asserted that Racine Industries, as the named insured on the policy, was the only entity with authority to grant Kevin permission to drive the Mazda. Home contended that because Racine Industries did not give Kevin permission, coverage for Bradley's injuries should be denied.

In contrast, the Phillips argued first that coverage was mandated because Home could not deny covering

injuries to innocent third parties on the basis of a misrepresentation as to the true owner of the Mazda. Related to this, the Phillips argued that Home should be estopped from denying coverage because it knew that Quentin Rench owned the Mazda. Home also knew that the Mazda was kept for the personal use of the Rench family. The Phillips asserted that permission from Home should be implied from all of the surrounding circumstances. Finally, the Phillips argued that Bradley should be covered because Kevin was an adult member of the Rench household. They asked the trial court to find as a matter of law that Kevin did not require permission from anyone to use the Mazda.

The trial court granted the Phillips' motion in part. It ruled that the Mazda was a "covered auto" and that Bradley could not be denied coverage on the basis of any alleged misrepresentation. However, the trial court stated that "there [were] . . . substantial issues of material fact both as to the issue of whether permission was given by Kevin's father or parents and also whether permission was given by Racine Industries."

Prior to trial, both sides moved *in limine* to exclude any reference to evidence relating to permission by Racine Industries. The trial court granted those motions. The Phillips also moved for a ruling that as a matter of law Kevin did not need his parents' permission to drive the Mazda because he was an adult member of the Rench household. They based their argument on sec. 632.32, Stats., and on *Arps v. Seelow,* 163 Wis. 2d 645, 472 N.W.2d 542 (Ct. App. 1991). The trial court denied the Phillips' motion, stating:

> [Section 632.32, Stats.,] still requires—sub. section (5)—for it to be applicable, no matter how broadly we construe, it still requires that the adult member be an adult member of the insured's house-

108

hold. Now, in the factual context that we are dealing with here, it is impossible for there to be anyone who is an adult member of the insured's household because the insured is the corporation.

. . ..

Now, that Motion would be denied. I am satisfied that Kevin Rench could not have given himself permission to operate the motor vehicle; since the true owner and members of his household are not the persons [named insureds] referred to in [sec. 632.32(5), Stats.]

The case went to trial on the sole issue of whether Kevin's parents gave him permission to drive the Mazda. The Phillips moved for a directed verdict at the close of evidence, which was denied. The jury answered special verdict questions indicating that Kevin did have parental permission to drive the Mazda on the night of the accident. However, the jury determined that Kevin had exceeded the scope of that permission. The Phillips again raised the *Arps* case in their postverdict motion for judgment not withstanding the verdict, and the trial court denied their motion. The court then entered a declaratory judgment denying Bradley coverage.

The Phillips now appeal and assert errors pertaining to the trial court's rulings on the summary judgment, directed verdict, and judgment not withstanding the verdict motions. Because we decide that summary judgment should have been entered in favor of the Phillips, we do not address the other asserted errors. We will incorporate additional facts as they are necessary to our discussion.

■■■■

Summary judgment is an appropriate method by which to determine insurance policy coverage. *State Farm Mut. Auto. Ins. Co. v. Kelly,* 132 Wis. 2d 187, 189,

389 N.W.2d 838, 839 (Ct. App. 1986). Summary judgment may be granted when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Id.* at 190, 389 N.W.2d at 839; sec. 802.08(2), Stats. Our review is *de novo,* without deference to the trial court. *St. John's Home v. Continental Casualty Co.,* 147 Wis. 2d 764, 782, 434 N.W.2d 112, 119 (Ct. App. 1988).

In this case, the issue raised at the summary judgment stage was whether Kevin had permission to drive the Mazda on the night of the accident. The Phillips asked the trial court to find coverage as a matter of law because Kevin is an adult member of the Rench household. The only facts pertinent to this issue are undisputed: Kevin was an adult at the time of the accident, and he was a member of the Rench household. The remaining question involves application of the omnibus insurance statute, sec. 632.32, Stats., to the facts of this case. This is a question of law that we review *de novo. See State Farm,* 132 Wis. 2d at 190, 389 N.W.2d at 839; *Dipasquale v. American Family Ins. Co.,* 168 Wis. 2d 75, 78-79, 483 N.W.2d 231, 233 (Ct. App. 1992).

Section 632.32, Stats., states in relevant part:

> **(3)** REQUIRED PROVISIONS. Except as provided in sub. (5), every policy subject to this section issued to an owner shall provide that:
> (a) Coverage provided to the named insured applies in the same manner and under the same provisions to any person using any motor vehicle described in the policy when the use is for purposes and in the manner described in the policy.
> (b) Coverage extends to any person legally responsible for the use of the motor vehicle.
> . . ..

**(5)** PERMISSIBLE PROVISIONS. (a) A policy may limit coverage to use *that is with the permission of the named insured or, if the insured is an individual, to use that is with the permission of the named insured or an adult member of that insured's household* other than a chauffeur or domestic servant. The permission is effective even if it violates s. 343.45(2) and even if the use is not authorized by law. [Emphasis added.]

Section 632.32 is a remedial statute, and must be construed broadly so as to increase rather than to limit coverage. *Derusha v. Iowa Nat'l Mut. Ins. Co.,* 49 Wis. 2d 220, 223, 181 N.W.2d 481, 483 (1970). The main purpose of sec. 632.32(3) is to assure insurance coverage for accident victims. *Nordahl v. Peterson,* 68 Wis. 2d 538, 551, 229 N.W.2d 682, 689 (1975). Section 632.32(3) and (5) must be read together to dictate that "adult members of the household must be deemed capable of giving themselves permission to drive." *Arps,* 163 Wis. 2d at 649, 472 N.W.2d at 543.

The parties do not dispute that the intent of sec. 632.32, Stats., is to provide protection to injured people. Where the parties differ is in the interpretation of the permissive use clause, sec. 632.32(5). Home argues that the disjunctive clauses in subsection (5) should be strictly read; because the named insured on the policy at issue was a corporation, not an individual, the "adult member of that insured's household" language cannot apply. In contrast, the Phillips urge a broader reading of "named insured." They assert that when the named insured is a corporation that knowingly insures cars owned by that corporation's CEO, no distinction should be made between the owner and the named insured for the purpose of determining permissive use when a third party is injured.

111

We agree with the Phillips. The word "permission" in the statute has been consistently construed broadly to grant coverage to injured third parties. For example, in *Krebsbach v. Miller,* 22 Wis. 2d 171, 125 N.W.2d 408 (1963), our supreme court considered a situation in which a named insured took title to a car but loaned the car to his son. The court held that the named insured was the title holder only as a matter of convenience, and that the person in control of the car should have the same powers as the named insured for the purpose of determining coverage. The court then held that "[t]he first permittee, by being granted complete dominion over the insured automobile, is put in the shoes of the named insured, and therefore his permittee is held to be the named insured's permittee." *Id.* at 178, 125 N.W.2d at 412 (citation omitted).

The language in *Krebsbach* was extended by the court in *Nordahl*. The court first noted that "[t]he situation of the borrowed car with the first permittee exercising the same control that an owner would exercise is of a different character than the situation where the first permittee is in fact the real owner of the vehicle." *Nordahl,* 68 Wis. 2d at 548, 229 N.W.2d at 688. The court then clarified that a true owner of a vehicle "who exercises control over the vehicle consistent with such ownership" need not have the permission of the named insured and title holder before giving permission to a third party to use the vehicle. *Id.* at 549, 229 N.W.2d at 689.

"Permission" was again redefined and broadened by this court in *Arps*. In that case, a car owner lived with his girlfriend. She took the car without permission and got into an accident. This court held that "[b]ecause the omnibus statute requires a broad construction of permission, adult members of the household must be deemed

112

capable of giving themselves permission to drive." *Arps,* 163 Wis. 2d at 649, 472 N.W.2d at 543. This was true regardless of the fact that the owner *never* gave his girlfriend blanket permission to use the car. *Id.* at 649, 472 N.W.2d at 544.

We recognize that none of these cases is directly on point with the issue in the present case. However, they indicate the courts' tendency to ignore technical nuances when interpreting sec. 632.32, Stats. The cases leading up to *Arps* dealt with two levels of permission: (1) permission from the person in control of the vehicle to a third party; and (2) implied permission from the title holder or named insured to the person in control of the vehicle. In our case, the Phillips ask us to conclude not that permission from Racine Industries should be implied, but that Kevin did not need *anyone's* permission to drive the Mazda because he was an adult member of the Rench household.

Underlying the Phillips' argument is a request that we make no distinction between the "named insured" and the owner of a vehicle for the purpose of providing coverage to injured third parties. They admit that *Arps* did not contemplate a situation in which the named insured was not also the owner of the vehicle in question. However, they argue that it would be consistent with the policy behind sec. 632.32, Stats., for us to extend the ruling in *Arps* to this case. We agree, and reiterate that our holding is confined to situations in which an insurer knowingly insures cars that are owned by corporation employees or officers and are used for family, nonbusiness purposes.

First, we observe that the legislature did not appear to distinguish between an owner and a named insured when it drafted the omnibus statute. Section 632.32(3), Stats., mandates that "every policy . . . *issued to an*

*owner*" must state that "[c]overage provided to the named insured applies in the same manner and under the same provisions to any person" using a covered auto. (Emphasis added.) If a policy is issued to an owner, then the owner is also the named insured. In this clause, the legislature used the two terms interchangeably. This is consistent with the courts' decisions that look at who has control of a vehicle rather than whose name is on the policy or the title in order to determine coverage.

Second, our decision is supported by strong public policy considerations. We reiterate that the purpose of sec. 632.32, Stats., is to protect injured third parties. *See Nordahl*, 68 Wis. 2d at 551, 229 N.W.2d at 689. Home renewed Racine Industries' commercial automobile policy knowing that Quentin Rench owned the Mazda that is listed as a covered auto in the policy. Home also knew that other family members, including Kevin, used the Mazda for nonbusiness purposes. It accepted premiums for liability insurance based upon known risks, including the risk that one of the Renches would be involved in an accident while using the Mazda. In fact, Home paid claims involving other cars that were owned by members of the Rench family but were insured under the commercial auto policy. It now tries to avoid paying for Bradley's injuries by relying on semantic distinctions that have no practical meaning.

We decline to distinguish between the owner and the named insured in this situation. To do so would leave an injured third party without compensation from the tortfeasor's insurer. It would also encourage avoidance of claims by insurance companies who issue commercial policies while also agreeing to insure an adult member of an owner's household who is an increased risk. On the facts of this case, public policy and precedent weigh strongly in favor of our holding that Kevin

114

Rench, as an adult member of an owner's household, could give himself permission to drive the Mazda.

Our holding is a logical extension of the *Arps* holding that adult members of "the household" can give themselves permission to drive. *Arps* did not discuss a situation in which an owner was not also the named insured. This does not make *Arps* inapplicable to this case, as Home suggests. Rather, *Arps* left open the question of whether coverage would be required when the named insured is a corporation, but the insurer knows that the covered vehicles are owned by individuals and used by family members. We have now answered that question. We therefore reverse and remand to the trial court with instructions to enter summary judgment in favor of the Phillips.

*By the Court.*—Judgment reversed and cause remanded with directions.