670 So.2d 258 (1996)
Succession of Alfred DUBOIS, Plaintiff-Appellee,
v.
PARISH GOVERNMENT RISK MANAGEMENT AGENCYGROUP HEALTH, Defendant-Appellant.
No. 95-546.
Court of Appeal of Louisiana, Third Circuit.
January 24, 1996.
Carrol Lee Spell Jr., Lafayette, Elizabeth Gresham Andrus, Lafayette, for Succession of Alfred Dubois. *259 Ben Louis Mayeaux, Lafayette, for Parish Government Risk Management Agency.
Before YELVERTON, SULLIVAN and KNIGHT[*], JJ.
SULLIVAN, Judge.
Gloria Gail Dubois, as administratrix of the succession of Alfred Dubois, filed suit for the payment of medical expenses incurred during Dubois' hospitalization for alcoholic cirrhosis of the liver. Dubois died from complications associated with that malady on November 17, 1987. Named as defendants were Dubois' health insurer, Parish Government Risk Management Agency (PGRMA), and his former employer, the Vermilion Parish Police Jury. The trial court found that alcoholic cirrhosis was a covered sickness under the PGRMA insurance plan and rendered judgment against PGRMA only, for medical expenses of $24,380.76 plus legal interest and costs. PGRMA appeals. We affirm.

FACTS
On October 18, 1987, Alfred Dubois was admitted to Abrom Kaplan Memorial Hospital where he remained until his death one month later. Upon admission, Dubois exhibited signs of extreme disorientation and weakness suggestive of early delirium tremens. His social history indicated that he was a chronic alcoholic. The diagnosis upon admission was cirrhosis of the liver with hepatic failure (precomatose state) and peptic ulcer disease. While hospitalized, Dubois was treated for numerous symptoms that subsequently developed, including diarrhea, jaundice, large esophageal varices, and uncontrollable ascites. The damage to his liver from alcoholic cirrhosis brought on these conditions as well as Dubois' death.
PGRMA refused to pay the claims submitted for Dubois' hospitalization, relying upon the following exclusion in its health and accident insurance contract:
SECTION VII, Exclusions and Limitations
Coverage under this contract is subject to the following exclusions and limitations for which no benefits shall be paid:
* * * * * *
2. Services or supplies resulting from drug or alcohol abuse or the consumption and treatment thereof, unless the employer unit subscribes to this optional benefit as outlined in Section V. [Emphasis added.]
It is undisputed that Dubois' employer, the Vermilion Parish Police Jury, did not select the optional benefit offered in Section V of the contract. Nonetheless, the trial court looked to the language of Section V for guidance in interpreting the above exclusion. Section V provides in part:
SECTION V, Covered Expenses
(g) Alcohol and Drug Abuse Benefits Benefits for the treatment of alcohol or drug abuse and/or consumption is limited to a lifetime maximum of $10,000.00 per covered individual subject to the deductible and coinsurance stated in the Schedule of Benefits. This is an optional benefit which must be selected by the employer units for all covered employees. [Emphasis added.]
After reading these provisions together, the trial court concluded that the true intent of the parties to this contract was to exclude from coverage only treatment for the chemical dependency of alcohol or drugs. Because Dubois was not treated for his addiction to alcohol, but rather for the life threatening condition of alcoholic cirrhosis, the trial court found that the PGRMA plan provided coverage for the claimed expenses.

OPINION
Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is based upon an independent examination of a contract on its face, the manifest error rule does not apply. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Co., 93-0911 (La. 1/14/94), 630 So.2d 759. In the instant case, the trial court found that Dubois' death *260 from alcoholic cirrhosis was caused by Dubois' long term consumption of alcohol. This factual finding is not disputed. Whether the PGRMA insurance plan excludes coverage for this illness is a question of law; on appellate review, we, therefore, must determine whether the trial court was legally correct.
It is well settled that an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts as set forth in the Civil Code. Crabtree v. State Farm Insurance Co., 93-509 (La. 2/28/94); 632 So.2d 736. Interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code art. 2045. If the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the party's intent and the agreement must be enforced as written. See La.Civ.Code art. 2046. The policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another. See La.Civ.Code art. 2050. A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties. La.Civ.Code art. 2053.
Regarding the interpretation of an exclusion in an insurance policy, the Louisiana Supreme Court stated in Garcia v. St. Bernard Parish School Board, 576 So.2d 975, 976 (La.1991):
Exclusionary provisions in insurance contracts are strictly construed against the insurer, and any ambiguity is construed in favor of the insured. Capital Bank & Trust Co. v. Equitable Life Assurance Society, 542 So.2d 494 (La.1989); Albritton v. Fireman's Fund Insurance Co., 224 La. 522, 70 So.2d 111 (1953). Equivocal provisions seeking to narrow the insurer's obligation are strictly construed against the insurer, since these are prepared by the insurer and the insured has no voice in the preparation. 13 J. Appleman, Insurance Law and Practice § 7427 (rev. ed. 1976). If the language of the exclusion is subject to two or more reasonable interpretations, the interpretation which favors coverage must be applied. Carney v. American Fire & Indemnity Co., 371 So.2d 815 (La. 1979); W. McKenzie & H. Johnson, 15 Louisiana Civil Law Treatise, Insurance Law and Practice § 4 (1986). The judicial responsibility in the interpretation of an insurance policy is the determination of the common intent of the parties. W. McKenzie & H. Johnson, supra.

Additionally, the burden is on the insurer to prove the applicability of an exclusionary clause in a policy of insurance. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1 Cir.1984).
With these principles in mind, we turn to the provisions of the contract in question. The first clause of Section VII(2) excludes from coverage services or supplies "resulting from drug or alcohol abuse or the consumption and treatment thereof." The second clause provides, "unless the employer unit subscribes to this optional benefit as outlined in Section V." The structure of this sentence suggests two conclusions. The first is that the words "this optional benefit" refer to all services and supplies that are the subject of the first clause. The second conclusion is that all that is excluded in Section VII(2) can be covered if the employer selects the optional benefit of Section V. The language of Section V(g), however, is more restrictive, providing benefits only for the "treatment of alcohol or drug abuse and/or consumption."
The "alcohol abuse" exclusion of Section VII(2) specifically refers to and appears to be defined by the "optional benefit" language of Section V(g). Regardless of whether the employer selected the optional benefits, the language of Section V(g) was contained in the contract provided to the insured. The trial court did not err in construing these provisions in light of one another. See La.Civ. Code art. 2050. Upon reading these two provisions, an insured could reasonably conclude that the benefits excluded in Section VII(2) are the same as those provided in the option of Section V(g), i.e., treatment for the addiction to alcohol. Viewing the policy as a whole, we find that the parties intended to exclude coverage for the treatment of alcohol abuse and/or consumption (chemical dependency) only and not for any other medical conditions resulting therefrom, such as alcoholic cirrhosis.
*261 Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and/or to impose and enforce reasonable conditions upon the policy obligations they contractually assume. Louisiana Insurance Guaranty Association v. Interstate Fire and Casualty Co., 630 So.2d 759. We are unaware of any statutory or public policy provisions that would prevent PGRMA from excluding alcoholic cirrhosis as a covered expense in its health insurance contract. See, for example, Dipasquale v. American Family Insurance Co., 168 Wis.2d 75, 483 N.W.2d 231 (Ct. of App.), review denied, 485 N.W.2d 413 (Wis.1992), where the court applied an exclusion for charges related to "alcoholism or complications thereof to alcoholic cirrhosis. However, any exclusion from coverage in an insurance policy must be clear and unmistakable. Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584. We cannot conclude that the "alcohol abuse" exclusion of PGRMA's policy clearly and unmistakably excludes coverage for the treatment of alcoholic cirrhosis.

DECREE
For the above reasons, the judgment of the trial court is affirmed at defendant-appellant's cost.
AFFIRMED.
NOTES
[*] Judge William N. Knight of the Thirty-first Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.