Per Curiam.
 

 Defendants appeal, by leave granted, from the trial court’s orders denying their motions for
 
 *362
 
 summary disposition.
 
 [1]
 
 We affirm in part and reverse in part.
 

 The minor plaintiff, through her parents as next friends, brought suit for injuries that occurred during a school ski trip. Defendant Betty Wentland, a teacher with the Goodman Armstrong Creek School District, in Goodman, Wisconsin, coordinated and supervised a one-day ski trip to Ski Brule in Iron County, Michigan. The plaintiff was one of the students who participated in the trip. On the ski equipment rental agreement, it was indicated that the plaintiff was a type II skier. A type II skier was defined as a moderate skier who preferred a variety of speeds and had skied on a variety of terrain, including the most difficult trails. There were twenty-one chaperones and sixty students on the trip.
 

 Two chaperones, defendants Tina Taylor and Amy Nelson, were present on the slopes and were waved over by a group of students, including the plaintiff. The students stated that they wanted the chaperones to accompany them down a hill called Double Doodle. The chaperones inquired whether the students had been down the hill before. Defendant Nelson expressly asked the plaintiff individually whether she wanted to go down the hill. The plaintiff indicated that she had skied down the hill. The chaperones lined up the students and spaced them apart, sending them down the hill one at a time. After all the students had gone down the hill, the chaperones proceeded down the hill and discovered the plaintiff lying by a tree. At the time of the accident, Wentland
 
 *363
 
 was present in the ski lodge. In the lodge, a check-in point was established where students would gather before lunch. Additionally, chaperones were present in the lodge with extra supplies, such as socks, mittens, lip balm, and other necessities.
 

 Defendants filed a motion to apply Wisconsin law because all parties were Wisconsin residents and Michigan’s interest in applying its own law based on the site of the accident was minimal. Defendants also moved for summary disposition based on governmental immunity. The trial court denied defendants’ motion to apply Wisconsin law and denied defendants’ motion for summary disposition, holding that Michigan immunity protections were not available to defendants.
 

 Defendants first argue that the trial court erred in denying their motion to apply Wisconsin law. We agree. Our review of questions regarding conflicts of law is de novo.
 
 Burney v P V Holding Corp (On Remand),
 
 218 Mich App 167, 171; 553 NW2d 657 (1996). When resolving a conflict of law question, we apply Michigan law unless a rational reason to do otherwise exists.
 
 Sutherland v Kennington Truck Service, Ltd,
 
 454 Mich 274, 286; 562 NW2d 466 (1997). An examination of any foreign state interest in having its law applied occurs first. If no state has an interest, the presumption that Michigan law will apply is not overcome. If a foreign state does have an interest in having its law applied, we then determine if Michigan’s interests mandate that Michigan law be applied, despite any foreign state interest.
 
 Id.
 
 However, application of a state’s law may not violate a party’s due process rights.
 
 Id.
 
 When a court chooses a state’s law, the state must have a significant contact or significant
 
 *364
 
 aggregate of contacts that create state interests such that choice of its law is neither arbitrary nor fundamentally unfair.
 
 Id.
 
 at 287, quoting
 
 Allstate Ins v
 
 Hague, 449 US 302, 313; 101 S Ct 633; 66 L Ed 2d 521 (1981); see also
 
 Olmstead v Anderson,
 
 428 Mich 1, 30, n 13; 400 NW2d 292 (1987). Furthermore, there is a presumption that the plaintiff will bring suit in the forum whose law is the most advantageous.
 
 Olm-stead, supra
 
 at 26. This raises the concern that applying the law sought by a forum-shopping plaintiff will defeat the expectations of the defendant or will upset the policies of the state in which the defendant acted or from which the defendant hails.
 
 Id.
 

 Michigan has little or no interest in affording greater rights of tort recovery to a foreign state resident than those afforded by the foreign state.
 
 Farrell v Ford Motor Co,
 
 199 Mich App 81, 94; 501 NW2d 567 (1993). While Michigan, a state where the injury occurred, has an interest in conduct within its borders, the interest in the litigation is minimal when none of the parties is a Michigan resident.
 
 Olmstead, supra
 
 at 28. The traditional doctrine of lex loci delicti, or application of the law of the place of the wrong, was undermined by escape devices employed to avoid unjust or harsh results, and Michigan abandoned the rule in 1982.
 
 Sutherland, supra
 
 at 278-284.
 

 In
 
 Sutherland, supra,
 
 the plaintiff, a resident of Ohio, was involved in an accident on a Michigan highway with an Ontario citizen, employed by an Ontario company. The Supreme Court concluded that application of Ohio law to the case would violate the defendants’ due process rights because the only contact that Ohio had with the litigation was the plaintiff’s residency.
 
 Id.
 
 at 287. Likewise, in the present case,
 
 *365
 
 Michigan’s only connection to this litigation is that it was the site of plaintiff’s injury. Furthermore, there is no indication that Michigan has any significant contacts such that application of Michigan law would not violate defendants’ due process rights.
 
 Id.
 
 Additionally, there is a forum-shopping concern because plaintiffs are not residents of the state of Michigan and seek to apply Michigan’s governmental immunity statute to defeat any immunity protection, arguing that immunity does not apply because of defendants’ nonresident status.
 
 [2]
 
 On the basis of these principles, we conclude that the trial court erred in denying defendants’ motion to apply Wisconsin law.
 

 Defendants next argue that the trial court erred in denying their motion for summary disposition. We agree in part. Wis Stat 893.80, Wisconsin’s governmental immunity statute, applies to employees of school districts,
 
 Kierstyn v Racine Unified School Dist,
 
 228 Wis 2d 81, 89; 596 NW2d 417 (1999), and also to agents of school districts, but only if the latter are servants for purposes of respondeat superior.
 
 Kettner v Wausau Ins Co,
 
 191 Wis 2d 723, 729-730; 530 NW2d
 
 *366
 
 399 (1995). Wisconsin’s governmental immunity statute relieves public officers or employees from liability for acts done pursuant to legislative, judicial, quasi-legislative, or quasi-judicial capacities.
 
 Kierstyn, supra
 
 at 90. Quasi-legislative and quasi-judicial acts involve the exercise of discretion, as opposed to ministerial acts, which are “absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion.”
 
 Id.
 
 at 90-91.
 

 Defendant Wentland was an employee of the Goodman Armstrong Creek School District, and her supervision of the students on the ski trip was discretionary. The “known and compelling danger” exception to governmental immunity,
 
 Cords v Anderson,
 
 80 Wis 2d 525, 541-542; 259 NW2d 672 (1977), does not apply because, assuming arguendo that the Double Doodle trail was dangerous, the plaintiff admitted that she had skied down the hill before suffering the injury. There is no duty to warn when the warning would duplicate existing knowledge. See
 
 Strasser v Trans-tech Mobile Fleet Service, Inc,
 
 236 Wis 2d 435, 459-461; 613 NW2d 142 (2000). As a matter of law, defendant Wentland is immune from suit for the minor plaintiff’s injuries, Wis Stat 893.80, and the trial court erred in denying her motion for summary disposition.
 

 Whether defendants Taylor and Nelson are entitled to immunity depends on whether they were servants of the school district. Although the dominant factor in a master-servant relationship is the master’s right of control, other factors may also be considered, including the nature of the job, the intent of the parties, the
 
 *367
 
 party that provided any instrumentalities or tools, and so forth.
 
 Kettner, supra
 
 at 737. The trial court properly denied the motion for summary disposition brought by the chaperones because the factual circumstances surrounding the chaperones’ role and duties were not undisputed.
 
 [3]
 

 Id.
 
 If they are determined to have been servants of the school district on the date of the accident, they will be entitled either to immunity or, if an exception to immunity is found, to the benefit of a $50,000 damages cap based on Wisconsin law.
 

 Affirmed in part and reversed in part. We do not retain jurisdiction.
 

 [1]
 

 The trial court denied defendants’ motion to apply Wisconsin law and defendants’ motion for summary disposition in two separate orders. The appeals from these orders were consolidated by order of this Court.
 

 [2]
 

 We also note that Wisconsin’s choice of law analysis outweighs the presumption of applying Michigan law. Wisconsin law requires examination of five factors: (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum’s governmental interests; and (5) application of the better rule of law.
 
 State Farm Mut Automobile Ins Co v Gillette,
 
 251 Wis 2d 561; 641 NW2d 662 (2002). Michigan, as the forum state, has little interest in this litigation and its governmental immunity statutes are limited to Michigan agencies, departments, commissions, and so forth. MCL 691.1401(c). Maintenance of interstate order weighs in favor of applying Wisconsin law because the free flow of persons and commerce between Wisconsin and Michigan will be facilitated. Loss of immunity protections for governmental employees and agents by virtue of crossing a state border requires that a state with minimal concerns defer to the state with substantial concerns. See
 
 Conklin v Horner,
 
 38 Wis 2d 468, 479; 157 NW2d 579 (1968).
 

 [3]
 

 For example, defendant Taylor testified that she was a substitute teacher for the school district as well as two other districts at the time of the accident. However, defendant Taylor did not characterize her participation as a chaperone as part of her duties. Rather, she characterized her participation in the event as a volunteer based on a student’s request.